HUNTER, Judge.
Food Lion, L.L.C. ("defendant"), presents the following issues for our consideration: (I) Whether the trial court erroneously denied defendant's motion for a directed verdict and motion for judgment notwithstanding the verdict because the evidence failed to establish negligence and proved plaintiff's contributory negligence, and (II) whether the trial court erroneously denied defendant's motion for a new trial. Food Lion also contends the trial court erroneously denied defendant's motions to quash plaintiff's subpoena duces tecum and erroneously instructed the jury. After careful review we conclude the trial court erroneously denied defendant's motion for a directed verdict.
The pertinent facts indicate that on 30 October 1999, Barbara Appel ("plaintiff"), a 67-year old woman, was shopping with her husband, Kenneth Appel ("Mr. Appel"), in a Durham, North Carolina, Food Lion grocery store. Plaintiff was walking down the aisles looking at the products and prices while her husband pushed the grocery cart behind her. She was wearing tennis shoes, her glasses and had her purse on her arm. As she was walking down the laundry detergent aisle looking at the price tags for specials, plaintiff stepped into something, looked down and realized she had stepped into some liquid detergent. Immediately thereafter, she fell. After she fell, she saw a bottle of liquid detergent with the cap off against the side of the shelf.
As her husband was unable to help her up, Mr. Appel notified store management. Store management contacted the paramedics and went to assist plaintiff. Mr. Appel drove his wife to the hospital. Due to the fall, plaintiff had a rotary cuff tear, torn ligaments in her arm and underwent surgery.
On 30 October 1999, the assistant store manager, Adam Smith ("Mr. Smith"), was working. According to Food Lion policy, the manager walks the entire store at 8:00 a.m., 10:00 a.m., 2:00 p.m. and 4:00 p.m. to make sure the store is neat, clean, that there is nothing on the floor, and that there are no expired products on display for sale. On 30 October 1999, Mr. Smith began his store walk at 10:00 a.m. and arrived to the laundry detergent aisle at approximately 10:45 a.m. He testified that the floor was clean and free of debris at that time. From 11:00 a.m. until 12:30 p.m., Mr. Smith testified he was in his office doing paperwork. Mr. Smith did not see plaintiff's accident, however, he went to her assistance after being notified by a customer that plaintiff had fallen. He called paramedics and obtained information for the accident report he had to submit to Food Lion's Risk Management Department.
The time of the accident is disputed by the parties. The accident report submitted by Mr. Smith indicates the accident occurred at 12:30 p.m. However, Mr. Smith testified that 12:30 p.m. is the time at which he saw plaintiff leave the store and that he believed the accident occurred between 11:30 a.m. and noon. Plaintiff did not state what time the accident occurred during her testimony; however, the emergency room report indicates she informed the ER doctors the accident occurred at 12:30 p.m. Nonetheless, Mr. Smith testified that he did not know the liquid detergent had spilled prior to plaintiff's accident and that no one had notified him of the spill. Mr. Smith testified that Mr. Appel informed him plaintiff caused the spill by standing on the bottom shelf and reaching for a bottle of liquid detergent. The bottle slipped out of her hands, hit the floor and busted. She stepped down into the liquid and fell. Mr. Appel denied making this statement and Mr. Smith's accident report made on 30 October 1999 does not include this statement. At the beginning of the trial, defendant moved to quash two subpoenas sent by plaintiff requesting copies of any accident reports made on 30 October 1999. Essentially, defendant contended the documents should have been requested by using the appropriate procedure under the Rules of Civil Procedure and not by subpoena. The trial court denied defendant's motion to quash. After all the testimony was completed, defendant moved for a directed verdict which was denied by the trial court. After rejecting defendant's proposed jury instructions, the trial court instructed the jury and a verdict was returned in favor of plaintiff. The jury found defendant negligent, determined plaintiff was not contributorily negligent and awarded damages in the amount of $50,000.00. After judgment was entered on the verdict on 10 October 2003, defendant moved for judgement notwithstanding the verdict and for a new trial. From the denial of the motions for a directed verdict, judgment notwithstanding the verdict and for a new trial, defendant appeals.
Defendant argues the evidence did not establish defendant's negligence, and therefore, the trial court erroneously denied its motion for a directed verdict and judgment notwithstanding the verdict. Specifically, defendant argues plaintiff failed to establish by the greater weight of the evidence that defendant had actual or constructive knowledge of the detergent spill.
As explained in Thompson v. Wal-Mart Stores, Inc., 138 N.C. App. 651, 547 S.E.2d 48 (2000), when reviewing the grant or denial of a directed verdict in the context of a slip and fall case: Our review of [the grant or denial of] a [motion for a] directed verdict is limited to a determination of whether the evidence was sufficient to go to a jury. We review the evidence in the light most favorable to the non-moving party, accepting the non-moving party's evidence as true and giving her the benefit of reasonable inferences. Reasonable inferences must be drawn from established facts, not other inferences or speculation.
To present a prima facie case based on negligence, a plaintiff must present evidence that the defendant had a duty to conform to a certain standard of conduct, the defendant breached that duty, and the breach of duty was the proximate cause of the plaintiff's injury.
In North Carolina, a store owner's duty to its customers is to use ordinary care to keep its store in reasonably safe condition and to warn of hidden dangers or unsafe conditions of which the store owner knows or should know. To show that a store owner breached its duty of care, a plaintiff must show that the store owner either negligently created the condition causing her injury or negligently failed to correct the condition after actual or constructive knowledge of its existence.
Thompson, 138 N.C. App. at 653-54, 547 S.E.2d at 49-50 (citations omitted). In this case, no evidence was presented indicating defendant either negligently caused the spill or had actual knowledge of the spill's existence prior to plaintiff's fall. Indeed, plaintiff testified that she did not know who caused the spill and she did not know whether defendant knew of the spill's existence prior to the fall. Mr. Smith testified that the floor was clean and free of debris at 10:45 a.m. and that no one had informed him of a spill prior to the plaintiff's fall. Mr. Smith also testified that if one of the employees had either seen or been notified of the spill, the employee would have reported the spill to management. Mr. Smith testified that none of the employees had informed him of the spill prior to the accident. Therefore, in order to establish defendant's negligence, plaintiff would have had to present sufficient evidence of defendant's constructive knowledge of the spill's existence. See id., see also Williamson v. Food Lion, Inc., 131 N.C. App. 365, 507 S.E.2d 313 (1998).
The plaintiff bears the burden of showing that a dangerous condition existed for such a period of time that the defendant through the exercise of reasonable care should have known of its existence. Constructive knowledge of a dangerous condition can be established in two ways: the plaintiff can present direct evidence of the duration of the dangerous condition, or the plaintiff can present circumstantial evidence from which the fact finder could infer that the dangerous condition existed for some time. Circumstantial evidence may be used to establish an inference. However, inferences must be based on established facts, not upon other inferences. In other words, a jury may draw an inference from a set of facts, but may not then use that inference to draw another inference.
Thompson, 138 N.C. App. at 654, 547 S.E.2d at 50 (citations omitted). In this case, plaintiff did not offer any direct evidence of when the spill occurred or how long the spill had been on the floor. Thus, plaintiff was required to provide circumstantial evidence from which the jury could infer the liquid laundry detergent spill had existed on the floor for some time.
The evidence viewed in the light most favorable to plaintiff indicates the assistant store manager walked the store beginning at 10:00 a.m. and did not find any debris or liquid on the laundry detergent aisle floor at 10:45 a.m. Although disputed, viewed in the light most favorable to plaintiff, the accident occurred at 12:30 p.m., the time indicated on the store accident report and the time plaintiff told emergency room doctors the accident occurred. Between 10:45 a.m. and 12:30 p.m. store management did not "walk" the store. Food Lion policy did not require management walks between the 10:00 a.m. and 2:00 p.m. store walks, which is typically the store's busiest time period when employees are assisting customers. Between 10:45 a.m. and 12:30 p.m., none of the store personnel or customers reported a spill on the floor. Plaintiff testified that there were no footprints or shopping cart tire tracks in the spill. The store manager testified that at the time of the accident, the floor was clean except in the area where the spill was located.
Defendant contends this case is similar to Thompson v. Wal-Mart Stores, Inc., 138 N.C. App. 651, 547 S.E.2d 48, and Williamson v. Food Lion, Inc., 131 N.C. App. 365, 507 S.E.2d 313. In Williamson, the plaintiff allegedly slipped on a grape in a Food Lion grocery store. Williamson, 131 N.C. App. at 366, 507 S.E.2d at 314. The plaintiff had entered the store at approximately 8:30 a.m. and approximately twelve minutes later, plaintiff slipped on a grape and fell. Id. The plaintiff did not see the grape prior to her fall, but opined the black juice smeared on the floor afterwards indicated to her that the floor must have been dirty. Id. A Food Lion employee had walked down the aisle in question at 7:34 a.m. and 7:59 a.m. and did not report any grapes were on the floor. Id. Rather, the Food Lion employee reported a loaf of bread was on the floor and picked it up. Id. Thus, approximately thirty minutes before the plaintiff's accident in Williamson, the evidence indicated the floor was free of debris and dirt. The trial court granted Food Lion's motion for summary judgment. Id. We affirmed the trial court's grant of summary judgment because the "plaintiff [was] unable to establish through anything more than `mere speculation or conjecture' that defendant knew or should have known of the grape, and as such her case [could] not withstand defendant's motion for summary judgment." Williamson, 131 N.C. App. at 369, 507 S.E.2d at 316.
In Thompson, the plaintiff slipped and fell while reaching for an item in the shampoo aisle. Thompson, 138 N.C. App. at 652, 547 S.E.2d at 49. On the floor, the plaintiff saw some small pieces of glass tucked up under the overhang of the lowest shelf. Id. She also saw and felt a puddle that was clear, slimy and thick. Id. After reporting her fall to an employee, the employee cleaned up the shampoo and the plaintiff continued shopping and left the store. Id. The trial court directed verdict in favor of Wal-Mart. Id. at 653, 547 S.E.2d at 49. This Court affirmed the directed verdict because constructive knowledge could be established in Thompson only by using an inference to draw another inference. Id. at 655, 547 S.E.2d at 50. As "[r]easonable inferences must be drawn from established facts, not other inferences or speculation[,]" we concluded the trial court correctly granted Wal-Mart's motion for a directed verdict. Id. at 653, 547 S.E.2d at 49. Plaintiff argues this case is most analogous to Furr v. K-Mart Corp., 142 N.C. App. 325, 543 S.E.2d 166 (2001). In Furr, the plaintiff slipped and fell in some clear liquid that was on the floor in front of a column of shelves holding Wisk detergent containers. Id. at 326, 543 S.E.2d at 167. Above the liquid there was a pink, dried substance on the tops and sides of the shelves holding the Wisk containers, as well as on the base structure between the lowest shelf and the floor. Id. The plaintiff also presented photographs of the accident area taken four days later that also showed the pink substance on the tops and sides of the lowest two shelves. Id. at 326, 543 S.E.2d at 167-68. In reversing summary judgment in favor of K-Mart, this Court stated the plaintiff presented "evidence . . . sufficient to raise an inference that the liquid detergent had been leaking for such a length of time that defendant should have known of its existence in time to have removed the danger or to have given proper warning of its presence." Id. at 328, 543 S.E.2d at 169. This conclusion was based upon the evidence that the liquid had leaked from a container on a shelf, down the side of the shelving structure onto the floor and that some of the liquid had dried. Id. This case is not analogous to Furr. Unlike the circumstances in Furr, none of the liquid had dried nor had any of the liquid leaked from a container on a shelf. Rather, the bottle was on the floor, the puddle did not have any debris, footprints or tire tracks in it, and the rest of the aisle was clean. We find the facts of this case are analogous to Williamson and Thompson. In this case, plaintiff argues we can infer constructive knowledge of the spill from the fact that no one checked the cleanliness of the floor between 10:45 a.m., when the assistant store manager was on the laundry detergent aisle, and 12:30 p.m., when the accident occurred. However, there is no indication of when during this one hour and forty-five minute time period the spill occurred. The lack of debris, footprints or tire tracks through the liquid tends to indicate the spill had not been there for a lengthy period of time. We conclude that on these facts there was insufficient evidence of constructive knowledge. Accordingly, the trial court erroneously denied defendant's motion for a directed verdict.
As we have concluded the trial court should have granted defendant's motion for a directed verdict, we do not reach defendant's remaining arguments.
Reversed.
Judges CALABRIA and LEVINSON concur.
Report per Rule 30(e).